IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WALLACE SEAFOOD TRADER, INC.,    )
                                 )
    Plaintiff,                   )
                                 )
v.                               )   CIVIL ACTION 10-0070-WS-N
                                 )
GREAT LAKES REINSURANCE,         )
(UK) PLC, etc.,                  )
                                 )
    Defendant.                   )

# ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 22).[1] The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 23, 24, 26, 27), and the motion is ripe for resolution. After carefully considering the foregoing, the Court concludes that the motion for summary judgment is due to be granted.

# BACKGROUND

The plaintiff is a family owned business, and Brent Wallace is one of the owners. The plaintiff operates a seafood processing facility in Baldwin County. In one of the buildings at the facility is a freezer room. On or about December 7, 2007, a portion of the ceiling in this room fell in, resulting in certain disputed damages to product, the freezer and other items.

---

[1] The complaint, filed in state court but removed to federal court, lists four fictitious defendants. The plaintiff has never sought to amend the complaint so as to name these defendants, and it is far too late to do so now. (Doc. 9 at 2). Accordingly, the fictitious defendants are **dismissed**.

The plaintiff was the named insured under a policy ("the Policy") issued by the defendant. The defendant made an initial payment of approximately $10,000 on the claim but declined to pay approximately $267,000 the plaintiff sought in a supplemental proof of loss. The two-count complaint asserts claims for breach of contract and bad faith. The defendant responded with a counterclaim for declaratory judgment.

## DISCUSSION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2).

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*,

941 F.2d 1428, 1438 (11th Cir. 1991)(en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

The Policy provides that the defendant will pay for certain loss or damage "caused by or resulting from any Covered Cause of Loss." (Doc. 2, Exhibit A at 18). Covered causes of loss included collapse. (*Id.* at 52). In particular, "[w]e will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building … that contains Covered Property insured under this Coverage Form if the collapse is caused by one or more of the following …." (*Id.*).

"Collapse," when used "with respect to buildings … means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purposes." (Doc. 2, Exhibit A at 52). There is evidence that part of the freezer room ceiling abruptly fell down, with the result that the freezer room could not be occupied for its intended purpose. The defendant, which repeatedly describes the incident as a "collapse,"[2] has not argued that no "collapse" within the contemplation of the Policy occurred.[3]

As noted above, not all collapses are covered causes of loss. Rather, the collapse must result from one or more causes listed in the Policy. The burden is on the insured to establish coverage, and this includes the burden of showing that the collapse resulted from one of the listed causes. *State Farm Fire & Casualty Co. v. Shady Grove Baptist Church*, 838 So. 2d 1039, 1043, 1046 (Ala. 2002). The defendant points to materials on file in an effort to show that the plaintiff cannot establish a jury question as to whether the collapse resulted from any of the listed causes. (Doc. 23 at 7-10).

The freezer room ceiling was composed of "foam" or "Styrofoam" panels or boards nailed to the ceiling joists. What fell were foam pieces and the bottom half of the

---

[2] (Doc. 23 at 6, 7, 9, 10, 14).

[3] Without elaboration, application to this case, or even an explanation why it is noted, the defendant cites *Central Mutual Insurance Co. v. Royal*, 113 So. 2d 680 (Ala. 1959), for the proposition that a "collapse" requires that the building "must lose its distinctive character as a building." (Doc. 23 at 6). In the first place, *Royal* expressed no such holding; instead, it quoted from a number of dictionaries and non-binding cases (including the one on which the defendant seizes) but held only that the policy at issue unambiguously did not extend "collapse" coverage to the mere existence of cracks in the walls and footings. *Id.* at 374-75. Indeed, the Court of Civil Appeals has already declined to read *Royal* as broadly as the defendant suggests. *See Fidelity and Casualty Co. v. Mitchell*, 503 So. 2d 870, 871 (Ala. Civ. App. 1987) (the holding of *Royal* is that cracks do not a collapse make; finding a collapse when a staircase and surrounding area "fell in" about eight inches). At any rate, the Policy – unlike that in *Royal* – explicitly extends "collapse" to cover a "falling down … of any part of a building." The freezer room ceiling certainly fell down, and it is clearly a part of the building. Again, the defendant articulates no argument to the contrary.

ceiling joists to which they were nailed. Immediately after the collapse, the fallen foam was discovered to be saturated with water, and the fallen bottom halves of the ceiling joists to be rotted from water. Prior to the loss, the plaintiff's repairman, Donnie Renfroe, visited the attic and noticed standing water on the foam, "pretty heavy" condensation which he attributed to the hot air of the attic above the freezer room coming in contact with colder air from the freezer, creating condensation. Post-collapse repairman Michael Dahlen, experienced in freezers and collapsing ceilings therein, agreed. (Renfroe Deposition at 14, 16, 21, 29, 40-41, 48-49, 51; Dahlen Deposition at 13, 44-46).

As the defendant notes, (Doc. 22 at 14), the plaintiff has identified three potential causes of the collapse. First, the water on the foam pieces so thoroughly saturated them that they fell due to their own waterlogged weight. Second, the bottoms of the ceiling joists to which the foam pieces were nailed were so rotted they could no longer hold the heavy foam. Third, the age of the freezer could have been a reason.

The first and third of these reasons cannot trigger coverage because they do not fall within the listed causes of collapse for which the Policy provides coverage. The listed causes are limited to: (1) certain "specified causes of loss";[4] (2) decay; (3) insect or vermin damage; (4) weight of people or personal property; (5) weight of rain collected on a roof; or (6) use of defective material or methods in construction/remodeling/renovation. (Doc. 2, Exhibit A at 52-53). Age of a structure is not a listed reason; neither is the weight of condensation on a ceiling, as opposed to the weight of rain on a roof. The plaintiff makes no argument to the contrary.

---

[4] The specified causes of loss are: fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, sinkhole collapse, volcanic action, falling objects, weight of snow, ice or sleet, and water damage. Water damage is limited to the discharge or leakage of water from a system or appliance located on the premises. (Doc. 1, Exhibit A at 54-55).

The plaintiff's second proposed cause, however, would trigger coverage. The listed causes that will support coverage include "[d]ecay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse." (Doc. 2, Exhibit A at 52). The defendant does not argue that rot is not decay under the Policy, and it does not argue that the decay was not hidden from view. Instead, its only two arguments in opposition to coverage under this section are that the plaintiff lacks evidence that decay caused the collapse and that the plaintiff knew of the decay before the collapse occurred. (Doc. 23 at 7, 9-10).

As noted, there is explicit testimony that rotten ceiling joists collapsed along with the foam pieces attached to the joists. The defendant nevertheless argues it is pure speculation whether the rotten ceiling joists caused the collapse because the plaintiff's witnesses did not assert with absolute certainty that the rotted joists caused the collapse. The defendant cites no authority and proffers no argument for the proposition that a jury question as to causation can be established only by opinion evidence, much less for the proposition that opinion evidence is speculative unless expressed with one hundred percent confidence. The physical circumstances observed after the collapse are adequate to raise a jury issue as to whether the rotted ceiling joists caused the collapse.[5]

The defendant argues it is uncontroverted that the insured knew of the ceiling joist decay prior to the collapse. It points to evidence that Renfroe told Wallace before the collapse that there was condensation on top of the ceiling above the freezer and consequent damage to the freezer ceiling; that, in response, Wallace instructed Renfroe to install turbines in an effort to remove hot air from the attic and prevent additional condensation; and that cracks developed in the freezer ceiling and walls prior to the collapse, which Renfroe sealed by spraying foam in the cracks. (Doc. 23 at 9). While this is evidence that Wallace knew there was water above the freezer room ceiling, it does

---

[5] This evidence distinguishes this case from *Shady Grove Baptist Church*, on which the defendant relies.

not establish that Wallace knew the water had caused the ceiling joists to rot. Indeed, Renfroe testified that he himself did not know of any rot in the ceiling joists prior to the collapse. (Renfroe Deposition at 47-48). A jury question exists as to whether the rotted ceiling joists were known to the plaintiff prior to the collapse.

Coverage for collapse that would otherwise exist is subject to certain exclusions to coverage identified by the Policy. In particular, coverage is excluded for "loss or damage caused directly or indirectly by … [c]ontinuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more." Such a circumstance excludes coverage "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (Doc. 2, Exhibit A at 47, 49). The defendant invokes this exclusion. (Doc. 23 at 10). It bears the burden of establishing the applicability of the exclusion. *Shady Grove Baptist Church*, 838 So. 2d at 1043.

The defendant has met its burden on motion for summary judgment of showing, by credible record evidence, that no reasonable jury could find that the rotted ceiling joists were not caused by water or condensation over a period of two weeks or more. Prior to the collapse, Renfroe saw standing water on the attic side of the foam panels. Both he and Dahlen recognized that hot air from the attic was mixing with cooler air from the freezer and causing condensation, resulting in a rotting of the wooden ceiling joists. This situation had existed at least since a new roof was installed after Hurricane Ivan in 2004. By the time of the collapse, not only the collapsed portion but most of the other ceiling joists over the freezer were rotted. (Renfroe Deposition at 14, 16, 48-49, 51-52; Dahlen Deposition at 44-46). Nothing in the record remotely suggests that the rot did not result from water or condensation, and nothing in the record remotely suggests the massive rot existing at the moment of collapse had all occurred in the previous two weeks. For purposes of summary judgment, it is uncontroverted that the exclusion applies.

The plaintiff makes no argument to the contrary. Instead, the plaintiff complains that the adjuster visiting the site a few days after the collapse "found coverage" and recommended payment of the plaintiff's initial, partial proof of claim (which the defendant paid), then instructed the plaintiff to repair the freezer. (Doc. 26 at 2, 6-7). "How can they now deny coverage?" the plaintiff asks rhetorically, explaining that the defendant's actions caused the plaintiff not to take steps to conclusively establish the cause of the collapse. (*Id*. at 7).

The plaintiff points to no evidence that the adjuster "found coverage." On the contrary, Wallace states in affidavit that "[i]t was *our belief* since the initial adjuster had approved the partial loss and it had been paid by the company that our claim was covered." (Doc. 26, Wallace Affidavit at 3 (emphasis added)). The adjuster actually advised that "[a]ll payment and coverage decisions are at the sole discretion of the insurance provider." (Doc. 24, Exhibit 4 at Lloyds 0086).

Without using the term, the plaintiff is essentially arguing that the defendant waived, or is estopped to rely on, the exclusion for extended water exposure. However, "coverage under an insurance policy cannot be created or enlarged by waiver or estoppel …." *Home Indemnity Co. v. Reed Equipment Co*., 381 So. 2d 45, 51 (Ala. 1980). The same rule applies for exclusions to coverage. *Id*. at 50-51 (these doctrines are "not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom"). Thus, an insurer who annually pays its insured more than the policy requires does not thereby waive, and is not thereby estopped from later asserting, an argument that the annual policy cap is lower than what its payments have been. *Payne v. Mutual Savings Life Insurance Co*., 2010 WL 3612134 at *2 (Ala. 2010). The plaintiff offers no authority to the contrary and does not explain why those cited above are not dispositive.

The complaint asserts both the normal and abnormal varieties of bad faith. (Doc. 1, Exhibit 1 at 6-7). "[C]ontractual liability is a prerequisite for liability for bad faith. Therefore, one who cannot prove she was entitled to benefits under an insurance policy

cannot recover on a bad-faith claim." *Acceptance Insurance Co. v. Brown*, 832 So. 2d 1, 16 (Ala. 2001). The same rule applies to both normal and abnormal claims of bad faith. *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 318 (Ala. 1999). Because, as discussed above, the plaintiff cannot establish a claim for breach of contract, neither can it establish a claim of bad faith.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted**. The plaintiff's claims for breach of contract and bad faith are **dismissed with prejudice**. Judgment shall be entered accordingly by separate order.[6]

DONE and ORDERED this 18th day of March, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] The defendant has moved to strike Wallace's affidavit. (Doc. 28). Because the affidavit does not implicate the applicability of the exclusion, it cannot affect the resolution of the motion for summary judgment. Accordingly, the motion to strike is **denied as moot**.